POKREFKY *v.* DETROIT FIREMEN'S FUND ASSOCIATION.[1]

MUTUAL BENEFIT ASSOCIATIONS—POWERS OF TRUSTEES—CHANGE IN BY-LAWS—RETROACTIVE EFFECT.

The fact that general authority is conferred upon the trustees of a benefit association organized under 1 How. Stat. chap. 165, to change its by-laws at pleasure, does not empower them to adopt, against a member's protest, a by-law which limits the amount of benefits to which, at his death, his beneficiary is entitled, to a specified share of a *per capita* assessment upon surviving members, where, under the by-laws existing when he became a member, his beneficiary was entitled to the entire proceeds of such an assessment.

Error to Wayne; Hosmer, J. Submitted May 4, 1899. Decided October 3, 1899.

*Assumpsit* by Anna Pokrefky, individually and as

---

[1] Rehearing denied December 12, 1899.

guardian of Charles Pokrefky, a minor, against the Detroit Firemen's Fund Association, to recover for death benefits. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Reversed.

*James D. May*, for appellant.

*Edwin Henderson*, for appellee.

LONG, J.   The defendant association was organized in April, 1867, under what is now chapter 165, 1 How. Stat. Its object, as set forth in its articles of association, is to afford relief to sick and disabled members and to the families of deceased members. Plaintiffs' decedent joined the association July 9, 1890. At that time the by-laws of the association provided that, in the event of the death of any of the members of the association in good standing, a *per capita* assessment of $5 should be levied upon each member of said association, and the entire amount paid to the properly-designated beneficiary. After the death of Pokrefky, the beneficiaries (the plaintiffs here) requested payment in accordance with the by-laws. It is conceded that there were 346 members in good standing at that time, and each paid to the treasurer the $5 assessment, making the sum paid in $1,730. The association paid the beneficiaries the sum of $1,500, and this suit is brought to recover the balance. The court below directed a verdict in favor of defendant. Plaintiffs bring error.

It appears that, at the time Pokrefky joined the association, sections 3 and 4 of article 8 of the by-laws provided:

"SEC. 3. Upon the death of any active or retired member of this association, there shall be collected from each surviving active or retired member thereof the sum of five dollars, said amount to be paid on or before the second payday of the fire department after the death of the said member; and, in default of said payment, the secretary shall strike the name of the defaulting member from the rolls of the association: *Provided, however*, that the board of trustees of this association may extend the time for said payment.

"Sec. 4. Upon the death of any active or retired member of this association, there shall be paid within ninety days to the person or persons (to be designated by said member) named in the instrument on file in the office of the secretary the entire amount collected under section 3, article 8."

The defense to the action is that on June 8, 1896, sections 3 and 4 of article 8 were amended: (1) By adding to section 3, as it stood originally, the following: "All moneys received by said association must be placed in one general fund. All moneys received at a death assessment in excess of $1,500 must be placed in the general fund. When the general fund equals or exceeds the sum of $2,500, there shall be no assessment made upon the members of this association upon the death of one of its members, but the beneficiary of such dead member shall be paid from the general fund: *Provided, however*, that no two death assessments shall be paid in succession from the general fund, except by the unanimous vote of the trustees and the approval of the president of the association." (2) By amending section 4 to read as follows: "Upon the death of any active or retired member of the association, there shall be paid within ninety days to the person or persons (to be designated by said member) named in the instrument on file in the office of the secretary the sum of $1,500, under section 3, article 8." It appears that, at the time these amendments to the by-laws were presented to the board of trustees, 186 members, including Pokrefky, protested in writing against these changes. There were 9 trustees of the association at that time, and the amendments were agreed upon by 8, notwithstanding the protests which came from more than one-half of the members.

The act under which the association was organized provided that:

"The affairs of each corporation shall be managed by not less than five nor more than twenty trustees, to be chosen by the members thereof, and to hold office for one year. * * * The by-laws of such corporation shall be

adopted by the trustees, who may change them at p easure."
1 Comp. Laws 1871, § 3038.

It was shown by the testimony given by the defendant
in the case that the association, prior to this change in the
by-laws, had limited or no funds on hand to pay sick
benefits, and that it was practically insolvent; that by these
amendments, and all the funds collected going into the
general fund, sick benefits could be paid, and still preserve
a fund of $1,500 to be paid out on the death of any mem-
ber. This was the course taken upon two deaths prior to
that of Pokrefky. The court below, being of the opinion
that, under the statute under which the association was
organized, the trustees had the power to amend the by-laws
in the manner in which they were amended, and that the
amendments were reasonable in view of the situation of
the finances of the association, directed a verdict in favor
of defendant.

The court was in error in thus directing the verdict. The
case is unlike *Borgards* v. *Insurance Co.*, 79 Mich. 440.
There it appeared the plaintiff had an equal voice in the
management of the affairs of the company, and under the
charter could have had his policy canceled and withdrawn;
and it was found that, by his conduct, he assented to the by-
laws, and the change in the terms of his policy caused there-
by. In the present case, Mr. Pokrefky, acting with a
majority of the members, protested against the change made
by the trustees. The by-laws, as they existed at the time he
became a member, constituted a part of the contract. If
the trustees had the power to limit the amount of payment
to be made to $1,500, they could limit it to a much less
amount. The act under which the company was organ-
ized permitted the trustees to change the by-laws at pleas-
ure; but it cannot be said that this was intended to place
it within the power of the trustees to adopt by-laws that
would have a retroactive operation upon the contracts of
the company made before new by-laws were adopted.
While the trustees undoubtedly had the power to pass or
change by-laws necessary for the well government of the

affairs of the company, it cannot be said that it was intended to clothe them with the arbitrary power to reduce the amount due beneficiaries under contracts made before new by-laws were passed. The same question was presented in *Insurance Co.* v. *Connor*, 17 Pa. St. 136, and it was there held that the by-law could have no retrospective effect.

The judgment must be reversed, and a new trial granted.

The other Justices concurred.