POKREFKY v. DETROIT FIREMEN'S FUND ASS'N.

1. BENEFIT SOCIETIES—CHANGE OF BY-LAWS—MODIFICATION OF
   BENEFITS—ASSENT OF MEMBER—CONSIDERATION.
   The assent of a member of a beneficiary association to a
   change in its by-laws, whereby certain benefits are increased
   and others diminished, is not without consideration, and
   hence need not be in writing, nor by any express agreement.

2. SAME—QUESTION FOR JURY.
   The trustees of a beneficiary association, after decedent became
   a member thereof, adopted an amendment to the by-laws, in-
   creasing the sick benefits, decreasing the death benefits, and
   increasing the membership dues. Decedent paid his assess-
   ments and increased dues without protest. He also stated to
   a member that he was satisfied with the changes made.
   *Held,* that the question whether he had assented to the
   change, so as to be bound thereby, was properly submitted to
   the jury.

Error to Wayne; Carpenter, J. Submitted April 25,
1902 (docket No. 141); opinion filed June 3, 1902. Re-
hearing granted January 5, 1903; resubmitted October 6,
1903 (docket No. 1); former opinion affirmed November
3, 1903.

*Assumpsit* by Annie Pokrefky, individually and as
guardian of Charles Pokrefky, a minor, against the
Detroit Firemen's Fund Association, to recover for death
benefits. From a judgment for defendant, plaintiff brings
error. Affirmed.

*James D. May* (*Robert T. Speed*, of counsel), for
appellant.

*Edwin Henderson*, for appellee.

GRANT, J. For a statement of the case we refer to 121
Mich. 456 (80 N. W. 240). The case was then reversed,
and new trial ordered. That trial has been had, resulting

in a verdict in favor of the defendant. The sole question litigated upon the second trial was whether Mr. Pokrefky had assented to or waived the change in the by-laws so as to be bound by such change. The question was left to the jury, who found such assent or waiver. The court instructed the jury that they must find "that there was on his part a clear and explicit understanding as to his rights in the matter, and that he intended to waive those rights; and that the burden of proof was upon the defendant to establish such waiver." The sole question is, Was there any testimony reasonably tending to show such waiver?

Upon the last trial defendant contended that Pokrefky had not signed any protest against this amendment to the by-laws. The jury by their verdict have established the fact that he did not. The matter was evidently very generally discussed by the members of the association, and the most of them took sides for or against the amendment. Mr. Dupont, one of the officers of the fire department, testified that Mr. Pokrefky told him that "he [Pokrefky] was well satisfied with $1,500, and $5 a week for injuries with pay, and $10 for sickness without pay." By the by-laws the dues were increased from $1 quarterly to $1 monthly. Mr. Pokrefky before his death paid these dues without protest, and each assessment that had been levied under the amendment since it was adopted. Counsel for plaintiff contend that he was in the position of a debtor, charged with no obligation to speak; citing *Chippewa Lumber Co.* v. *Phenix Ins. Co.*, 80 Mich. 116 (44 N. W. 1055). The facts in the two cases are dissimilar. While not perhaps controlling, it is significant that Mr. Pokrefky paid the increased dues, making no protest. If the association could not change the amount to be paid upon his death, for the same reason it could not charge him more for his dues than were provided when he joined. He could have retired from the association instead of paying the increased fees and receiving certain benefits from the change. He should have, at least, protested, and tendered the fees

required by the original by-laws, unless he desired to waive them.

We think there was evidence for the jury, and the judgment is affirmed.

Hooker, C. J., Moore and Montgomery, JJ., concurred. Long, J., did not sit.

## ON REHEARING.

Hooker, C. J. The plaintiff brought an action, as guardian for her minor child and in her own right, against the defendant, to recover a benefit on the life of her deceased husband. At the time he joined the defendant association, viz., July 9, 1890, sections 3 and 4 of article 8 of the by-laws provided:

"Sec. 3. Upon the death of any active or retired member of this association, there shall be collected from each surviving active or retired member thereof the sum of five dollars, said amount to be paid on or before the second pay-day of the fire department after the death of said member; and, in default of said payment, the secretary shall strike the name of the defaulting member from the rolls of the association: *Provided, however,* that the board of trustees of this association may extend the time for such payment.

"Sec. 4. Upon the death of any active or retired member of this association, there shall be paid within ninety days, to the person or persons (to be designated by said member) named in the instrument on file in the office of the secretary, the entire amount collected under section 3, article 8."

Plaintiff's husband died on November 18, 1896, at which time there were 346 members in the association, and she claims that she was entitled to receive the sum of $1,730. The association paid $1,500, and refused to pay more, basing such claim upon the ground that, prior to Pokrefky's death, section 4 of article 8 had been amended to read as follows:

"Upon the death of any active or retired member of this association, there shall be paid within ninety days, to

the person or persons (to be designated by said member) named in the instrument on file in the office of the secretary, the sum of fifteen hundred dollars, under section 3, article 8."

This action was brought for the remainder.

The defendant is a charitable association incorporated in 1867, under Act No. 20, Laws 1855, being section 8264 *et seq.*, 3 Comp. Laws 1897. The articles of association provided that the society "may provide for the widows and orphans of deceased members, and the payment of such sum as may be prescribed by the by-laws of such association." Persons joining the association subscribed to the by-laws as follows:

"We, the undersigned, members of the paid fire department of the city of Detroit, faithfully promise and agree to support the foregoing constitution and by-laws, and to act in accordance with the requirements contained therein, so long as they shall continue in force, and while we retain our membership in the association."

The cause was before this court on a former occasion (see 121 Mich. 456 [80 N. W. 240]), a verdict having been directed for the defendant. It was then held that the amendment could not have the effect of changing the pre-existing contract. Upon a second trial the defendant claimed that the deceased assented to the change in the by-laws, and therefore to a corresponding change in his contract of insurance. The question was left to the jury, and a verdict was found in its favor, and a judgment upon the verdict was affirmed. See *supra.* The case is now before us upon rehearing, and the only question is whether the trial court erred in submitting the cause to the jury, and upon the question of assent.

The following are the amendments in full:

"ART. 4. There shall be paid monthly, in advance, by each member of the association (not an honorary member), to the secretary thereof, the sum of one dollar ($1.00), and, in default thereof, the secretary shall strike the name of each member from the roll of the association."

"SEC. 1, ART. 8. Any member of this association who shall receive any injury, or who may become sick, so as to incapacitate him from attending to his duties, shall, by applying to the sick and visiting committee, and upon the recommendation of said committee, receive relief as follows: For accident, five dollars ($5.00) per week; for sickness, ten dollars ($10.00) per week; and no relief shall be granted for a period of less than one week."

"SEC. 3, ART. 8. Upon the death of any active or retired member of this association, there shall be collected from each surviving active or retired member thereof the sum of five dollars ($5.00), said amount to be paid on or before the second pay-day of the fire department after the death of said member; and, in default of such payment, the secretary shall strike the name of the defaulting member from the rolls of the association: *Provided, however*, that the board of trustees of this association may extend the time for such payment. All moneys received by this association must be placed in the one general fund. All moneys received at a death assessment in excess of fifteen hundred dollars must be placed in the general fund. When the general fund equals or exceeds the sum of twenty-five hundred dollars ($2,500.00), there shall be no assessment made upon the members of this association upon the death of one of its members, but the beneficiary of such member shall be paid from the general fund: *Provided, however*, that no two death assessments shall be paid in succession from the general fund, except by the unanimous vote of the trustees and the approval of the president of the association.

"SEC. 4, ART. 8. Upon the death of any active or retired member of this association, there shall be paid within ninety days, to the person or persons (to be designated by said member) named in the instrument on file in the office of the secretary, the sum of fifteen hundred dollars ($1,500.00), under section 3, article 8."

It is said that these amendments were made under amended articles of association, which were adopted after Pokrefky became a member of the association; but we do not see that this fact has any especial significance. The defendant claims the following as sufficient evidence of assent to carry the question to the jury, when considered in the light of the by-laws, which trebled the dues, increased the sick and accident benefits, and fixed the

amount due upon death of a member at $1,500, whereas before it might have been more or less than that sum, as it depended on the number of members at death:

1. Testimony that the deceased paid monthly dues regularly for five months at the increased rate.
2. That he paid two assessments after the amendment.
3. The fact that he must have known of the change in the by-laws.
4. His failure to sign a protest against the amended by-laws.
5. Testimony of a witness that Pokrefky had told him that he was well satisfied with the amendments and the provision for a death benefit of $1,500.

The first two propositions are not disputed, and we do not discover that the third is. It would be inconsistent for plaintiff's counsel to dispute it, for the reason that they claim, and sought to prove, that deceased signed a protest a few days after the adoption of the amendment. Such a protest was offered in evidence by the plaintiff's counsel. It is as follows:

"Detroit, Mich., July 3rd, 1896.
"To the Board of Trustees of the Firemen's Fund Association.
"*Gentlemen:* We, the undersigned members of the Firemen's Fund Association, protest against the changes made in the articles of said association, at a meeting held June 8th, '96. We would respectfully suggest that in the amendment to section 1, article 8, all after 'For sickness, $10.00 per week' be stricken out, and *pro rata* for any portion of a week. We also object to the accumulation of a general fund, as suggested by amendment 1, section 3, paragraph 3. We prefer that all moneys collected at each assessment be paid to the legal representative of the deceased member."

It appears to have been signed by a large number of the members, and deceased's signature was written, with others, upon a sheet of paper that was pinned to the petition, which was a long paper, made by attaching two or more sheets together. The defendant claimed that it was not shown that the deceased's signature was intended to be

attached to the petition.    It seems to be conceded that the jury found that he did not sign this protest, though we do not find the fact stated in the record, further than it may be inferable from this verdict.

It being beyond the power of the board of trustees to change the contract rights of the parties by changes in the by-laws, it is urged that an intent to do so should not be assumed, and that it is only when the language admits of no other reasonable construction that such a design will be imputed, and that it is consistent with the language to interpret these amendments as applicable to new contracts only.    Had this amendment provided merely for a change of the death benefit to a fixed sum less than the contracts theretofore made provided for, such a construction might be given; but these amendments contemplated other changes, which would have been inconsistent with such idea, except at great inconvenience to the society.    Under the original articles, only $4 per year was collectible for dues, while death benefits absorbed the assessments made for them.    Under the new by-laws, dues, and at least a portion of the assessments, were to go into one fund, and any surplus might be applied to the payment of sick benefits.    We cannot see how the new scheme could be carried out without establishing two classes, with different dues, different benefits, and different bookkeeping.    It seems highly improbable that an intent to discriminate between old and new members existed, and all of the evidence in the case indicates the contrary,—even the protest which counsel for plaintiff offered in evidence.

There is evidence that the deceased knew of this change, for he not only paid increased dues repeatedly, but there was testimony that he discussed it with another member. If defendant's theory is correct, he was then in the attitude of a member who, knowing that his associates were submitting to new obligations and changed relations, not only acquiesced without objection, but, on the contrary, expressed his approval of the change, whereby he became

entitled to increased sick benefits, in common with others. Plaintiff's counsel says in his brief that:

"It seems to have been understood that some change would have to be made to meet the increasing number of sick and accident cases."

This was done by not only increasing the dues, from which such claims had theretofore been paid, but also by making a rule which might, and probably would, and did, divert a portion of the assessments to the same purpose. Did he not then owe a duty to his associates of refusing the benefits of such amendment or giving his assent? Could he consistently pay the added dues with the knowledge of doubled indemnity in the matter of sick benefits, and pay assessments with the knowledge that other beneficiaries were receiving reduced death benefits, all the while entertaining the secret design to assert the invalidity of the by-law as to his own policy? The argument that the amendments are divisible, and that he might assent to the increased dues and sick benefits, while he did not assent to the change in death benefits, is untenable. We have seen that the changes were parts of one scheme, where possibly diminished death benefits and increased dues were compensated by increased sick and accident benefits.

There was a consideration for an assent to such a change of contract. The case of *Borgards* v. *Insurance Co.*, 79 Mich. 440 (44 N. W. 856), is in point upon this question. There a policy providing compensation for loss by fire was changed so as to take away liability when the loss was caused by fire from steam-power used on the premises. The plaintiff, with knowledge of this change, made no objection, but continued his membership, and attended a meeting where this and other by-laws were read. It was held that by this he assented to the change in his policy caused by the change in the by-law, and that "this is not in conflict with the principle established in *Becker* v. *Insurance Co.*, 48 Mich. 610 (12 N. W. 874)," upon which counsel for plaintiff in this cause relies. All cases recognize the rule that a policy may be changed by a by-law,

if assented to by the owner. Where there is a considera-
tion, as in this case, such assent need not be in writing,
nor by an express promise. Had the deceased voted upon
the adoption of this by-law, he would have assented to the
change in his policy; and we think that he is equally bound
by any acts which clearly indicate his assent, and where-
by his associates have a right to understand that he does
assent. We might not agree with the jury were this case
here upon the facts, though, if it is true that he paid dues
and assessments, with full knowledge that he was doing
so under the new by-law, without protest, and expressed
his satisfaction with the change, the finding of an assent
is not so unreasonable as to justify a new trial. All of
the members of the society were interested in its success.
All were equally affected by the dangers which confronted
it, and interested in averting disaster. It was no great
hardship to ask the deceased to bear his share of the bur-
den, and not seek to impose it upon his associates, if he
gave them a right to believe that he consented to do other-
wise.

The judgment is affirmed.

MOORE and MONTGOMERY, JJ., concurred. CARPEN-
TER and GRANT, JJ., did not sit.