DE GRAW v. SUPREME COURT, I. O. F.

INSURANCE—MUTUAL BENEFIT POLICY—FRATERNAL ASSOCIATIONS—
   CONTRACTS—CONFLICT OF LAWS.

   Plaintiff was wife of a member of defendant fraternal insurance association, who, during his lifetime, received a certificate of membership wherein he agreed that amendments might be made from time to time in relation to the constitution and laws of the order fixing the premiums and rate of assessments, and should become a part of the contract. The defendant association was organized under the laws of the Dominion of Canada. Fifteen years after the issuance of this certificate the defendant accepted a new charter from the parliament of Canada, changing the name of the association and authorizing it to make a charge or assessment against policies issued prior to 1899

and affecting the policy of decedent. The assessment was proportional to a valuation deficiency existing as to this class of policies, which were paying less than the cost of insurance. *Held*, that the charge or assessment was not against public policy, or contrary to the vested rights of insured.

Error to St. Clair; Tappan, J. Submitted April 28, 1914. (Docket No. 149.) Decided October 2, 1914.

Assumpsit by Emma De Graw against the supreme court of the Independent Order of Foresters upon a benefit certificate for a balance claimed to be due. Judgment for defendant. Plaintiff brings error. Affirmed.

*P. H. Phillips*, for appellant.

*Stevenson, Carpenter, Butzel & Backus* (*Elliott G. Stevenson* and *Thomas G. Long*, of counsel), for appellee.

MOORE, J. Suit was brought to recover a balance claimed to be due upon a certificate of insurance. The plaintiff was the wife of William J. De Graw, who died on the 7th day of October, 1913, and who was a member of the defendant. The certificate sued upon was executed September 23, 1898, in Toronto, Canada, following the receipt there of an application executed by the decedent, and was delivered to the decedent on September 23, 1898, in the State of Michigan. In the certificate of insurance appears the following:

"In consideration of the application for membership and of the agreements and statements therein contained; * * * and in consideration also of the provisions of the constitutions and laws enacted by the supreme court of the Independent Order of Foresters, and of any and all amendments thereto adopted from time to time by the said the supreme court, and in consideration also of the declarations and promises contained in the obligation taken by initiates in subordinate courts, * * * and upon the faith and

credit of all and each of which agreements, statements, promises, representations, provisions and declarations, and in consideration of the payment by the applicant at the times required, of any and of all the assessments, dues, fees, capitation tax and fines, required by the said constitutions and laws to be paid on account hereof, this benefit certificate is issued,   *   *   *   the supreme court of the Independent Order of Foresters agrees to pay and doth by these presents agree to pay."

At the time of the delivery of said certificate, and as a part thereof, decedent signed an agreement on the back thereof as follows:

"I agree that the constitution and laws enacted by the supreme court, Independent Order of Foresters, as well as any and all amendments thereto which may be adopted from time to time by the said supreme court, shall be a part of this contract—special reference being made by the parties hereto to the following sections of the constitution and laws, namely: Sections   *   *   *   237, 238, 239.   *   *   * "

The sections, the numbers of which are given, are the sections of the constitution and laws which prescribe the rates of assessments to be paid by members.

The trial court made the following findings, which are based on the record:

"*Fourteenth.* At the time the decedent became a member of the society, it was provided by the constitution and laws that the same might be amended, altered, or repealed as provided in the act of Parliament under which the society was then organized and existing, and also at a regularly convened session of the supreme court of the society, upon the affirmative vote of two-thirds of the votes cast in favor of any proposition submitted in due form.

"*Fifteenth.* The Parliament of Canada, on May 16, 1913, passed and adopted an act, entitled 'An act to consolidate and amend the act relating to the supreme court, Independent Order of Foresters, and to change its name to the "Independent Order of Foresters," ' copy of which is hereto attached as Exhibit D. Sections 3, 4 and 5 of chapter 100 of the Statutes of

1901, which are referred to in section 11 of said act of Parliament of May 16, 1913, are not material to a determination of the issues raised in this action.

"*Sixteenth.* The supreme court of the society was, in pursuance of section 12 of the act of Parliament last mentioned, duly and regularly convened in regular session within six months from the date of the passing of the said act, and at such session the following resolution was adopted by the supreme court on August 26, 1913: 'Moved by the supreme counsellor, seconded by all the members of the joint committee, and resolved, that the Independent Order of Foresters' Consolidated Act (being 2 & 3 Geo. V. [Canada] chapter 113) be and the same is hereby accepted by the supreme court of the Independent Order of Foresters.' Which after discussion was put to a yea and nay vote of the members of the supreme court and each and every member of said supreme court voted thereon and said resolution was adopted and said act accepted by the vote of 176 in favor of the same to 28 against the same, of which 28, 23 thereafter changed their votes and voted in favor of the same.

\*       \*       \*       \*       \*       \*

"*Eighteenth.* In pursuance of section 3 of the schedule of said act of Parliament, the assets of the society were determined, and it was found that the same, other than the present value of future premiums and dues and accumulated and future liens under the 1908 readjustment, that is, the value of all the property, real and personal, including securities belonging to the society, was $20,559,911. Of this $14,314,250 resulted from the assessments paid by members who joined the society on and after January 1, 1899, and $6,245,661 resulted from assessments paid by the members who joined the society prior to January 1, 1899.

\*       \*       \*       \*       \*       \*

"A valuation deficiency existed as to the members who joined the society prior to January 1, 1899, and such deficiency was found to be $25,555,448; that is, there existed a deficiency of such amount in the assets as compared with the society's liabilities on account of the benefits to be provided for on behalf of the

members who joined prior to January 1, 1899. Or, in other words, there should have been, and if such members had always paid proper and adequate rates there would have been, in hand to the credit of the members who joined prior to January 1, 1899, $31,-801,109, instead of $6,245,661. Such deficiency resulted solely from the inadequate rates theretofore paid by the members who joined the society prior to January 1, 1899.

\*        \*        \*        \*        \*        \*

"*Twenty-third.* In pursuance of section 4 of the schedule of the said act of Parliament, said supreme court at said regular session in 1913 levied or made a charge as an assessment against the mortuary benefit certificate of each member who joined prior to January 1, 1899, of a sum not exceeding its proportion of the valuation deficiency determined as aforesaid.

\*        \*        \*

"*Twenty-fourth.* The charge made by said resolution against the certificate of the decedent whose age at his nearest birthday at the time of joining the society was 31 years was $184. The same was not paid by decedent at the time it became due, and upon his death was, together with interest, deducted from the amount otherwise payable to his beneficiary. The decedent had paid all other assessments, dues, and charges and was in good standing at the time of his death.

"*Twenty-fifth.* A fraternal fund was established by the supreme court in pursuance of section 6 of the schedule of said act of Parliament. Out of this fund there was paid to the plaintiff, as beneficiary of the decedent under said certificate sued upon, the sum of $50.

\*        \*        \*        \*        \*        \*

"*Twenty-seventh.* The amount paid by the society to the plaintiff as beneficiary under the certificate of decedent was $865.86. The total deduction made from the face of said certificate was $134.14."

The court found the deduction was a proper one, and rendered judgment in favor of defendant. The case is brought here by writ of error.

Counsel for appellant claiming, we quote from the brief:

"The questions raised are:

"*First.* Is the contract made with the plaintiff a Michigan or a Canadian contract?

"*Second.* Is the action taken by the defendant order in making the assessment against the certificate in question under the act of the Canadian Parliament binding upon members resident within this State?"

Counsel answers the first of these questions that it is a Michigan contract, and the second of them in the negative, and insists a judgment should have been rendered in favor of the plaintiff for the full amount withheld by defendant company, citing as conclusive in favor of the plaintiff the case of *Pokrefky* v. *Firemen's Fund Ass'n,* 121 Mich. 456 (80 N. W. 240); *Dolan* v. *Supreme Council, C. M. B. A.,* 152 Mich. 266 (116 N. W. 383, 16 L. R. A. [N. S.] 555, 15 Am. & Eng. Ann. Cas. 232), and many other authorities found in the brief. We do not think an answer to the questions above stated is necessarily decisive of the case, nor do we think the cases cited, especially the Michigan cases, are controlling in favor of the plaintiff, for an examination of them will show them to be distinguishable from the instant case.

In *Pokrefky* v. *Firemen's Fund Ass'n, supra,* it was held the trustees attempted to exercise a power not conferred upon them. The case was here again (131 Mich. 38 [90 N. W. 689, 96 N. W. 1057]), when it was held that whether or not the member of the association had assented to the change was a question for the jury.

In *Dolan* v. *Supreme Council, C. M. B. A., supra,* it was held that the contract before the court was not against public policy, and it was also held that the new by-law did not apply to the existing contract.

In none of these cases is it held that a member might not agree in advance that the charter might be amended or by-laws be passed, that would have the effect of diminishing the amount of insurance.

Though the case is not on all fours, there is an interesting discussion of the principles involved in *Bissell* v. *Heath,* 98 Mich. 472 (57 N. W. 585).

The language used by Justice OSTRANDER in *Wineland* v. *Maccabees of the World,* 148 Mich. 608 (112 N. W. 696), is pertinent here:

"In so far as arguments have been addressed to the point that the parties to a mutual benefit certificate may expressly agree to be bound by after-enacted by-laws, they are answered in favor of the validity of such contracts by a previous decision of this court (*Borgards* v. *Insurance Co.,* 79 Mich. 440 [44 N. W. 856]), and, we think, by the weight of authority (*Ross* v. *Modern Brotherhood of America,* 120 Iowa, 692 [95 N. W. 207]; *Supreme Commandery K. of G. R.* v. *Ainsworth,* 71 Ala. 436 [46 Am. Rep. 332]; *Beach* v. *Supreme Tent K. of M.,* 177 N. Y. 100, 105 [69 N. E. 281]; 1 Bacon on Benefit Societies and Life Insurance [3d Ed.], §§ 185-188). See collection of cases in note to *Supreme Council Am. L. of H.* v. *Champe* [127 Fed. 541], 63 C. C. A. 282. Such an agreement being found—and there can be no doubt that it was made in the present case—the effect of the particular by-law upon the particular member depends upon whether it was one which the association might lawfully make, whether it should be applied retroactively, whether it disturbs vested rights, whether it is reasonable.   *   *   *

"Whether the changes with respect to assessments made in 1904, against which he protested, are within these powers remains to be considered. We have no doubt that it was lawful, and no violation of contract rights, for defendant to increase the number of assessments to meet the demands arising from the death of members. There seems to be no good reason why fewer assessments, at a greater rate, should not be levied, so long as the increase in rates is proportional; young and old members, alike, contributing. Whether such action be a mere detail in management aimed at procuring for distribution the same sum of money in a different way, or intended to actually increase the contributions over present necessities for distribution and to accumulate a fund, it may be, so

long as it is proportional and reasonable, supported, as against a protesting member, by his agreement in his application to conform to and be governed by laws to be from time to time made by the representative governing body of the association. While courts are not agreed upon this proposition, we are inclined to the views expressed in *Fullenwider* v. *Supreme Council R. L.,* 180 Ill. 621 (54 N. E. 485, 72 Am. St. Rep. 239) ; *Messer* v. *Grand Lodge A. O. U. W.,* 180 Mass. 321 (62 N. E. 252) ; *Reynolds* v. *Supreme Council R. A.,* 192 Mass. 150 (78 N. E. 129, 7 L. R. A. [N. S.] 1154, 7 Am. & Eng. Ann. Cas. 776) ; *Conner* v. *Supreme Commandery Golden Cross* [117 Tenn. 549], 97 S. W. 306. We agree with the court below that the increased assessments are not, in view of the conditions disclosed, unreasonable. Whether they evidence a departure from the statute purpose and plan of existence of such association is a question not presented."

It is clear that no one could tell to a certainty what the assessments in the future should be to make it possible for the defendant to pay the beneficiaries of its members definite sums of money. It is equally clear if it was selling insurance for less than it cost it would be only a question of time when it must go out of business. The record shows that it did insure those members joining prior to 1899, at a rate less than the cost of insurance. We do not think it was against public policy or an infringement upon vested rights for the insured to agree that such changes might be made in the laws of the association during his membership, as would enable it to carry out its insurance agreements.

The following cases are instructive and in point: *Fry* v. *Insurance Co.* (C. C.), 31 Fed. 197; *Canada Southern R. Co.* v. *Gebhard,* 109 U. S. 527 (3 Sup. Ct. 363).

Judgment is affirmed.    ○

MCALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred.