## LIVINGSTON v. CYPHER.

1. INSURANCE—MUTUAL COMPANIES—LIABILITY OF MEMBERS FOR PRO RATA ASSESSMENTS.

Members of a mutual fire insurance company in process of liquidation are liable for pro rata assessments to cover losses in their class of risks, although the rate is higher than in a class subsequently created under Act No. 407, Pub. Acts 1919, where their rate was not affected by losses in the new class, since Act No. 256, Pub. Acts 1917, pt. 4, chap. 4, § 13, while requiring ratable assessments, recognizes the right of the company to classify risks.

2. SAME—MEMBERS BOUND BY AMENDMENTS TO CHARTER.

Members of a mutual fire insurance company who agreed in their application to accept the insurance subject to the charter and rules and regulations and by-laws of the company then in force or that might thereafter be in force, were bound by subsequent amendments to its charter.

Error to Lapeer; Wixson (Walter S.), J. Submitted June 8, 1928. (Docket No. 55, Calendar No. 33,764.) Decided July 24, 1928.

Assumpsit by Charles D. Livingston, commissioner of insurance, custodian and general manager of the Capital Mutual Fire Insurance Company, against Jesse Cypher and another for assessments due on a policy of insurance. Judgment for defendants on a directed verdict. Plaintiff brings error. Reversed.

*Clayton F. Jennings* and *Thomas, Shields & Silsbee,* for appellant.

*Theo. D. Halpin,* for appellees.

The commissioner of insurance, liquidating this mutual insurance company, brought this suit to recover assessments levied by the company while it was a going concern, and an assessment levied by order of the circuit court for the county of Ingham, where the liquidation proceedings are pending. Under its original charter, it was an assessment company, article 11 providing:

"ARTICLE 11. All members of the company shall be liable for assessments for their pro rata share of all losses and expenses and liabilities of the company."

However, section 12 of its original charter provided:

"The directors may provide for an advanced assessment."

So far as appears the directors did not provide for the issuance of policies which were paid for in advance, but after the enactment of Act No. 407, Pub. Acts 1919 (Comp. Laws Supp. 1922, § 9100 [264]), the charter was amended, just when does not appear. The defendants took out their policy when the old charter was in force. The policy then being issued contained the following agreement:

"It is further agreed that the charter and by-laws now in force, or that may be hereafter in force, together with the application, form a part of the policy agreement."

All of the exhibits are not printed in the record, nor have they all been filed with the clerk. It is stated in plaintiff's brief, and is not questioned, that the application contained the following language:

"I accept this insurance subject to the charter and rules and regulations and by-laws of said company now in force, or that may hereafter be in force."

However, this is the substantial equivalent of the provision in the policy above quoted. Under the new charter by article 11 the old business of the company was continued under classes A and B, which paid uniform assessments as theretofore. The new charter, however, provided for another class made up of those who paid for their insurance in advance. Article 12 provided, so far as important here:

"In addition to the foregoing two classes of insurance, namely, class A and class B, and which shall hereafter be known as such, there shall be another class known and designated as class "C", in which all property permitted by Act No. 407, Public Acts of 1919, may be insured by this company under such rules and regulations as may from time to time be determined upon.

"Provided, however, that such class C insurance shall be kept separate, and an assessment made at the time of issuing the policies sufficient to cover the probable losses and expenses for the period for which the policies are written and in no case shall the policies or members of class C be assessed for losses occurring in classes A and B. The schedule of advance or premium charge in class C shall be uniform and the same for all risks of the same nature and hazard."

It would appear that the Ingham circuit court determined the amount of money necessary to pay off the claims for losses covered by policies in classes A and B, and levied sufficient on these two classes to meet such claims, and that it did the same with losses covered by policies in class C, and that while the assess-

ments on class A and class B .were the same, those on ·class C were for a less amount. The trial judge directed a verdict for defendants, and counsel for both parties here concede that the only question before us is:

"The issue may be stated as whether the company itself or the plaintiff in this case as custodian (receiver) of the company can legally levy assessments against the members of the company at a rate which is not the same as to all classes."

FELLOWS, J. (*after stating the facts*). The learned trial judge was of the opinion that the case of *Patrons' Mutual Fire Ins. Co.* v. *Brinker*, 236 Mich. 367, was controlling, and stated that but for that case he would hold with plaintiff. .We are persuaded that the instant case is clearly distinguishable from that case. In that case the defendant had taken out and paid for insurance in the same way he would have bought insurance in an old line company; the charter at the time the policy was issued did not permit assessment on that class of insurance; having bought and paid cash for his insurance, this court held he could not be called upon by an amendment to pay for it again by way of an assessment. The insurance there involved was similar to class C in the instant case. The case is further distinguishable in that the company there was not in liquidation. While section 13 of chapter 4 of part 4 of Act No. 256, Pub. Acts 1917 (Comp. Laws Supp. 1922, § 9100 [275]), provides for ratable assessments, section 16 (§ 9100 [278]) recognizes the right to classify risks.

The insurance defendants took out required them to pay assessments to cover losses in the kind of risks then insurable by the company, and which although. no different are now known as class A and class B. They are by these assessments now required to pay for such loss and no others. They are not now required

to pay for losses in class C or any other class. They pay the same as if class C did not exist. They are called upon to pay not a penny more nor a penny less than they would be called upon to pay if class C had not been created. By the act of 1919, farmers' mutuals were permitted to enter new and broader fields. Manifestly, any insurance company insuring different classes of property, and dealing with such different classes in different manner, must have the right to classify. They cannot insure all the different classes at a flat rate. This company segregated the business so that, although it was taking on new business and doing it in a new way, it kept intact the old business, and, as pointed out, defendants suffered not a penny by the amendments to its charter. But beyond that, under the agreement in the policy, the defendants were bound by the amendments to its charter. *Wineland* v. *Maccabees of the World,* 148 Mich. 608; *DeGraw* v. *Supreme Court I. O. F.,* 182 Mich. 366; *Brown* v. *Great Camp K. O. T. M. M.,* 167 Mich. 123; *Williams* v. *Supreme Council C. M. B. A.,* 152 Mich. 1. We conclude the trial judge was in error in directing a verdict for defendants. He was also in error in refusing to admit exhibit "C" which was not an offer of compromise.

The judgment will be reversed and a new trial granted. Plaintiff will recover costs of this court.

NORTH, WIEST, CLARK, POTTER, and SHARPE, JJ., concurred. FEAD, C. J., and McDONALD, J., did not sit.