W. L. SLEIGHT *et al.*, Appellees, v. SUPREME COUNCIL OF MYSTIC TOILERS, AND THE MYSTIC TOILERS, Appellants.

Mutual Insurance: PLEADINGS: IMMATERIAL MATTER:   In an action to recover on a benefit certificate of insurance, a circular letter which may have induced the contract, but is not referred to or made a part of the certificate, cannot be made the basis of recovery and should be stricken from the pleadings.

Evidence.   In a suit on a benefit certificate, a circular not identified as coming from defendant nor as having been seen or relied upon by assured in becoming a member, and claimed receipts for dues not identified, are inadmissible.

**Action at Law on Benefit Certificate:** WHEN WILL NOT LIE. An action at law to recover a death benefit, under a certificate providing that the beneficiary shall receive from the benefit fund an assessment equal to one assessment from each contributing member not exceeding a specified sum, will not lie, especially where there is no showing that the society had money on hand from assessments, which it was in duty bound to pay plaintiffs', and the objection to the forum is not waived by failure to move to transfer the cause to the equity docket.

**Monument Benefits:** RECOVERY OF. Where a benefit certificate provides that the association upon certain conditions will pay $100, toward the erection of a monument within six months of receipt of proofs of death, a recovery therefor cannot be had in the absence of proof of compliance with the conditions, and if brought within the six months, is premature.

**Funeral Benefits:** RECOVERY OF. Where, by the terms of a certificate, funeral benefits are to be paid to the nearest of kin or the one having charge of the burial, recovery cannot be had therefor in the absence of an allegation that claimant occupies such relation.

*Appeal from Linn District Court.*—HON. W. G. THOMPSON, Judge.

THURSDAY, OCTOBER 29, 1903.

ACTION at law upon a benefit certificate issued by the defendant, the Supreme Council of the Mystic Toilers. Trial to a jury, verdict and judgment for the plaintiffs, and defendants appeal.—*Reversed.*

*Sager & Sweet* for appellant.

*Heins & Heins* for appellees.

DEEMER, J.—February 8, 1900, Laura A. Sleight was admitted to membership in the defendant association; and there was issued to her a certificate which provided, among other things, "that Edward Sleight *et al.* in case of the death of said member are hereby entitled to receive from the benefit fund  *  *  *  the amount of one assessment for each contributing member, not to exceed the sum of one thousand dollars. But the right to receive such payment in case of death or disability is to be governed by

the provisions, conditions, and limitations contained in the articles of incorporation, constitution and laws, rules and regulations of the society." The certificate also provided the following benefits:

"Fourth. For funeral expenses to each member, one hundred dollars, in addition to the benefits named in each member's benefit certificate or benefit certificates, payable as provided by the constitution and laws.

"Fifth. For a monument to each member one hundred dollars, in addition to the benefits named in such member's benefit certificate or benefit certificates, payable as provided by the constitution and by-laws. The benefits enumerated in this benefit certificate are subject to further explanation, regulations and amendments, from time to time, by the constitution and laws of the Supreme Council of the Mystic Toilers."

The constitution and by-laws contain the following somewhat obscure provisions with reference to the payment of these additional benefits:

"Funeral Benefits. As soon as it shall come to the notice of the president or secretary of a subordinate council that a death of a member of this society has occurred, and that such member is in good standing in this society, it shall be his or her duty to make known such fact in the quickest possible manner to the supreme secretary, giving the member's name in full; who shall at once upon receipt of such notice, together with the supreme president, draw an order for one hundred dollars on the benefit fund of the supreme council and forward the same to the subordinate secretary, who shall immediately pay the same to the nearest of kin of the deceased member, or to the one having the burial of such member in charge, taking a receipt therefor as provided by the supreme secretary; it being understood by all parties in interest that this amount of one hundred dollars, shall be paid towards defraying the funeral expenses, and for no other purpose whatever; and

in no case shall such payment be construed and accepted as any evidence of a member's good standing, or the validity of such member's claim against this society—until all such funeral expenses are paid; nor shall this funeral benefit be deducted from the face of the benefit certificate of such deceased member."

"Monument. Within six months of the time that satisfactory proofs of death of a beneficial member of this society has been filed with the supreme secretary, there shall be paid the sum of one hundred dollars, for the erection of a monument at the grave of the deceased member; upon such monument shall be engraved the insignia of this society in a conspicuous place, unless the relatives or beneficiaries of such member notify the supreme secretary and decide that they wish to erect a monument costing more than one hundred dollars; in that event after the monument which is to bear the insignia of this society in a conspicuous place has been erected at the grave of such member, and satisfactory proofs thereof upon blanks furnished by the supreme secretary have been made to the supreme secretary, then the supreme president shall draw an order upon the supreme benefit fund and pay one hundred dollars to the relatives or beneficiaries who erected the monument. But should either a relative or beneficiary, make known to the supreme secretary that he wishes to erect such monument costing more than $100.00, and should not do so within one year of the date of filing of proof of death of such member, then the supreme secretary shall at once cause to be erected such monument as at first contemplated by this society, all right for so doing having been delegated by the deceased member, by complying to all the laws of this society, so far as he or she was capable of doing. The amount of $100 for monument herein mentioned shall not be deducted from the face of the benefit certificate of the member, but is understood to be a special provision for this special purpose."

The constitution and by-laws also contained the following:

"Should a member at any time after he or she has been initiated into the subordinate council over one year, become financially unable to pay his or her dues and assessments, or by sickness be so reduced financially, that he or she cannot pay his or her dues or assessments, then if such distressed member will notify in writing the president of his or her subordinate council, it shall be his or her duty to make an investigation; and if such facts prove to be so, the president of the subordinate council shall, first by voluntary subscription try to raise the money to keep the dues and assessments of such member paid; if not able to do this in the manner above stated, then the president shall order the secretary to draw orders upon the treasurer of the subordinate council to pay such dues and assessments."

Laura A. Sleight died on or about October 1, 1900, and, the defendant association refusing to recognize any liability under the certificate, this action was brought by

1. PLEADINGS: immaterial matter.

the beneficiaries therein to recover the promised benefits. The action is at law. Defendants interposed many defenses, the principal one being that the deceased member failed to pay her assessments and dues as required by the rules and regulations of the association, and was suspended long prior to her death. In reply, plaintiffs, among other things, pleaded the sickness and disability of the insured at the time the assessments and dues accrued, as an excuse for nonpayment. In the original petition plaintiffs also pleaded: "That, for the purpose of inducing members to enter and become members of said association, the Supreme Council of Mystic Toilers caused to be printed and circulated a circular, in which, among other provisions, are the following: 'A member cannot be suspended when sick or disabled, and not financially able to pay the assessments, provided

he notifies the secretary of the lodge to which he belongs
before he becomes delinquent.' That the deceased, Laura
A. Sleight, was so sick and disabled, and not financially
able to pay her assessments, of which fact the secretary
of the lodge was duly notified, and had full and complete
knowledge." Defendant moved to strike out these last-
quoted allegations from the petition, but its motion was
overruled. We think it should have been sustained.
While this circular may have been an inducement to the
making of the contract, it was no part of it, and it should
have no place in a pleading seeking to recover the prom-
ised benefits. *Congower v. Ass'n*, 94 Iowa, 499.

At the trial, plaintiffs were permitted to introduce a
circular which embodied some of the statements pleaded.
This circular was not identified as coming from the de-
fendant, nor was there any evidence that the
2. EVIDENCE.    insured ever saw or relied upon it before be-
coming a member of the society. Defendant's objection
to this document should have been sustained. Plaintiffs
say that, conceding the error, there was no prejudice, for
the reason that the articles of incorporation, constitution,
and by-laws introduced by defendants contain substanti-
ally the same matter. But this is a mistake. There is a
material difference between the statements in this circu-
lar and the provisions of the by-laws. By the latter pro-
visions, one who had been a member for one year could
not be suspended if sick or disabled, etc. The circular
makes no such qualification. As the insured had not
been a member for one year, she was not entitled to plead
her sickness or disability as an excuse for nonpayment of
dues and assessments. It is easy to imagine what effect
this circular may have had upon the jury. Prejudice is
very apparent.

Over defendant's objections, plaintiffs were permitted
to introduce some papers which purported to be receipts for

the payment of assessments and dues. These were not identified in any manner, and should not have been received.

Defendant asked an instruction to the effect that the provision excusing payment of assessments and dues did not apply to the facts of this case, but the instruction was refused. It should have been given.

II. The principal contention in the case is, will an action at law lie for any of the benefits promised in the certificate, the articles of incorporation, constitution, and

3. ACTION at law on benefit certificate: when will not lie.

by-laws of the defendant association? The action is to recover death, funeral, and monument benefits, aggregating in all $1,200. The jury returned a verdict for $1,190, allowing a credit to defendant of $10, as provided in an article of the constitution and by-laws, which need not be set out. In various ways, defendant challenged plaintiffs' right to recover any of these benefits in an action at law. As to the recovery of death benefits, the matter is foreclosed by the case of Rambousek against this same association, reported in 119 Iowa, 263, wherein it is held that an action at law will not lie. Plaintiffs attempt to distinguish this case from that, but as to death benefits there is manifestly no distinction. They also say that defendants' remedy, if they had any, was by motion to transfer the case to the proper docket, and, as they did not file such motion, they are in no position to avail themselves of the point now made. This is also fallacious. *Newman v. Continental Ass'n*, 72 Iowa, 245. Besides, plaintiffs are suing for other than death benefits, and as to some of these an action at law will lie; hence a motion to transfer would not have been availing. Furthermore, they say that the *Rambousek Case* is in conflict with *Hart v. Accident Ass'n*, 105 Iowa, 717. But this is not true. In the *Hart Case* the certificate provided for the payment of fixed sums, not exceeding a certain amount. In this case, as in the *Rambousek Case*, the certificate contained no

such promise.  The agreement was that plaintiffs were to
receive from the benefit funds the amount of one assess-
ment from each contributing member, not exceeding the
sum of $1,000.   In that respect the case is similar to
*Bailey v. Mutual Ben. Ass'n*, 71 Iowa, 689, and other like
cases.   The cases are also alike, in that in each an advance
assessment is contemplated and provided for.   The *Ram-
bousek Case* also distinguishes the *Hart Case*, which dis-
tinction we still think is sound, although a mistake was
made in that case in stating that the number of assess-
ments per year was limited to seven, whereas it should
have been stated as twelve.   This mistake does not affect
the principle announced, for what was called the "equal-
izing fund" cannot be resorted to in this case. 'Moreover,
even if it should be held that plaintiffs were entitled to
maintain an action at law for damages, they should have
alleged that the society had in its hands money collected
by assessment, which it was in duty bound to pay to plain-
tiffs.   *Congower v. Endowment Ass'n*, 94 Iowa, 499; *New-
man v. Covenant Mutual Asss'n*, 72 Iowa, 242; *Tobin v.
Society*, 72 Iowa, 261.   This they did not do.   This point
was distinctly made in a motion in arrest of judgment,
and the motion should have been sustained.   *Neskern v.
Northwestern Ass'n*, 30 Minn. 406, is not in conflict with
our holding.   In that case there was nothing suggestive of
the thought that defendant's liability was dependent upon
the collection received from an assessment.   So much as
to death benefits.

    III.   As to the funeral and monument benefits:
These were not made dependent upon an assessment.   On
the contrary, there is an express promise to pay them as
4. MONUMENT     provided in the constitution and by-laws of
benefits: re-
covery of.      the association.   Turning now to the pro-
visions of the constitution and by-laws with reference to
monument benefits, as before quoted, and without repeat-
ing them, it will be seen that the sum of $100 is to be paid

for the erection of a monument within six months after proofs of death are filed, unless the relatives or the beneficiary notify the society that they wish a more expensive monument. In that event certain conditions are to be performed by them, whereupon payment of $100 shall be made to the party erecting the monument. This was understood to be a special provision for a special purpose. Assuming for the purposes of the case that the beneficiaries or relatives may bring action for this benefit, they must bring themselves within the terms and conditions of the promise. This they have not done. Moreover, the amount was not due until six months after proofs of death were filed with the association. Mrs. Sleight died October 4, 1900, and this action was commenced February 16, 1901. The six months had not elapsed, and the action was prematurely brought. Defendant's denial did not mature this provision of the policy. *Quinn v. Insurance Co.*, 71 Iowa, 615.

The funeral benefits were payable to the nearest of kin of the deceased, or to the person having the burial of the member in charge—this amount to be paid towards defraying the funeral expenses, and for no other purpose; and the amount is only to be paid when

**5. FUNERAL benefits: recovery of.**

the member is in good standing. It will be noticed that this is payable to the nearest of kin, or to the person having the burial in charge, towards defraying the funeral expenses. Plaintiffs did not allege that they were nearest of kin, nor that they had the burial of the member in charge. They did, perhaps, plead facts from which it should be inferred that the member was in good standing, but they did not show that they were entitled to the funeral benefits. These questions were all raised in various forms, but were disregarded by the trial court.

Defendants' motion for a new trial and in arrest of judgment should have been sustained.

Some other matters are discussed by counsel, but as the foregoing are controlling, and effe tually dispose of the case, it is not necessary to consider them.

For the errors pointed out, the judgment is REVERSED.