PEARSON, Respondent, v. KNIGHT TEMPLARS AND MASONS INDEMNITY COMPANY, Appellant.

St. Louis Court of Appeals, October 17, 1905.

1. **LIFE INSURANCE: Benefit Societies: By-Laws: Contract of Insurance.** Where a policy of life insurance provides "that the constitution and by-laws printed on the back of this policy shall separately and collectively form and be a part of the contract," the constitution and by-laws printed on the back of the policy thereby become a part of the contract of insurance.

2. ——: ——: **Changing By-Laws: Excessive Assessments.** A mutual beneficiary life insurance association can not modify a contract of insurance without the express assent of the member insured, although such member in his application agreed to abide by the constitution and rules, as they then were, or might thereafter be constitutionally changed; and where a change was made materially increasing the assessments contrary to his contract, he could recover the excess in an action for that purpose.

3. ——: ——: ——: ——: **Unit of Assessment.** Where a contract of insurance with a beneficiary association provided that the insured on his death should receive $3,000 plus the amount paid in assessments, the company could not, on the ground of necessity, increase the assessments by basing it on the $3,000 *and* accumulated assessments under $1,000, in the face of a provision of the contract that $1,000 should be the unit of assessment.

Appeal from Louisiana Court of Common Pleas.—*Hon. David H. Eby,* Judge.

AFFIRMED.

*Ball & Sparrow* for appellant.

The application of respondent, and the constitution and by-laws of appellant constituted a part of the contract of insurance between respondent and appellant and must be read into respondent's policy in order to see all of the terms of the contract. Slater v. Supreme Lodge, 76 Mo. App. 387; Laker v. Royal Fraternal Union, 95 Mo. App. 353. Respondent, in his application for membership in the appellant company, having agreed, "if accepted, to abide by the constitution, rules and regulations of the company as they now are or may be constitutionally changed hereafter," was, and is, amenable to the provisions of section 4, article 4, as amended February 16, 1900, and is estopped to complain thereof. Richmond v. Sup. Lodge, 100 Mo. App. 8; Morton v. Royal Tribe of Joseph, 93 Mo. App. 78; Brower v. Sup. Lodge, 74 Mo. App. 490; State ex rel v. Grand Lodge, 70 Mo. App. 456 to 467; Knight v. Sup. Lodge K. of P., 117 Ind. 489; Gilmore v. Knights of Columbus, 58 Atl. 223; Ross v. M. B. A., 95 N. W. 207; Fullenweider v. Royal League, 180 Ill. 621; Stohr v. Society, 82 Cal. 557; Nibl. Ben. Soc. & Acc. Ins. (2 Ed.), sec. 24-28; Commandery v. Ainsworth, 71 Ala. 449.

*Pearson & Pearson* for respondent.

The defendant's contract and policy of insurance does not provide that any future amendment or change of its constitution will operate as a modification or change of his contract. Such a construction of respondent's policy of insurance would be at variance with constructions by the courts on similar policies of insurance.

Morton v. Supreme Council, 100 Mo. App. 76; Sisson v. Court of Honor, 104 Mo. App. 54; Smith v. Supreme Lodge, 83 Mo. App. 57; Knights Templars v. Jarman, 104 Fed. Rep. 638; Knights Templars v. Jarman, 23 Sup. Ct. Rep. 108.

### STATEMENT.

Appellant is a life insurance company engaged in furnishing life indemnity to widows, orphans, relatives and devisees of deceased members, on the assessment plan, and, as such, is incorporated under the laws of the State of Illinois. On January 12, 1887, respondent, then fifty-seven years old, and a resident of the city of Louisiana, Missouri, made a written application to appellant for a policy of insurance on his life, which said written application contained the following language: "I further agree, if accepted, to abide by the constitution, rules and regulations of the company, as they now are or may be constitutionally changed hereafter." Appellant accepted respondent's application for membership and issued to him its policy, number 2724, for "three thousand dollars and all the money paid on the policy in assessments."

One of the provisions of the policy is as follows: "It is further agreed that the constitution and by-laws printed on the back of this policy shall separately and collectively form and be a part of this contract."

Section 4, of article 4, of said constitution and by-laws, as printed on the back of said policy, is as follows: "Upon the death of any member an assessment, increasing with age, shall be made upon the surviving members (provided an assessment is needed) according to the following table of rates; said table is drawn for $1,000, which shall be the unit in determining all other amounts:

Table of Rates.          Assessments per $1,000
Years of age, inclusive........21 to 30, $ .50
  *      *      *      *      *      *      *      *

Years of age, inclusive..66 and upward, 2.55

But no assessments shall be made so long as the money in the death fund will pay the maximum loss in full."

The above provision of appellant's constitution and by-laws continued in force until February 16, 1900, when the same was amended, constitutionally and regularly, so as to read as follows: "Upon the receipt of proof, satisfactory to the board of directors, of the death of a member, an assessment, increasing with age, shall be levied upon the surviving members, provided an assessment is needed, according to the following table of rates; said table is drawn for $1,000, which shall be the unit determining all other amounts:

Years of age, inclusive........21 to 30, $ .50

\*    \*    \*    \*    \*    \*    \*    \*

Years of age, inclusive........66 to 70,   2.55
71 and upwards the amount which should be charged for each age according to the American Experience Table of Mortality, proportioned to the above rate for 66 to 70 years of age."

Respondent paid all assessments required of him as provided by the constitution and by-laws of appellant until the same was amended as above set forth.

At the date of said amendment, respondent was sixty-nine years of age, and, according to the constitution and by-laws in force at the time of becoming a member of appellant company, he was paying an assessment, on the death of each member, of $2.55 per thousand. Since the date of said amendment, however, appellant has, on the death of a member, assessed respondent at the rate provided in the amended by-law, which assessments respondent has paid under protest, claiming that the effect of said amendment, in providing that he be assessed the amount "which should be charged for his age according to the American Experience Table of Mortality," instead of $2.55 per thousand, on the death of each member, as provided by the by-laws at the time he became a member, was to increase the cost of his insurance.

By the increase in the amount of his assessments, plaintiff, up to the time of the commencement of the suit, had paid $253.05 more than his assessments would have amounted to under section 4, of the constitution of the defendant order, as it existed at the date of the issuance of the policy.

The court, to whom the issues were submitted, found for plaintiff and assessed his damages at $253.05, with six per cent interest thereon from the date of the commencement of the suit, October 14, 1903. Defendant appealed.

BLAND, P. J. (after stating the facts).—1. We quote the following from appellant's brief:

"Appellant contends, that as respondent agreed in his application that he would 'abide by the constitution, rules and regulations of the company, as they now are or may be constitutionally changed hereafter,' and inasmuch as it was provided in respondent's policy 'that the constitution and by-laws printed on the back of the policy shall separately and collectively form and be a part of this contract,' and as the constitution and by-laws provided for their own change or amendment, thereby providing that the contract itself might be changed or amended, it has not violated respondent's rights.

"Appellant also contends that as respondent's policy, instead of being one for $3,000, is one for the 'sum of three thousand dollars, and all the money paid on the policy in assessments,' and as his beneficiary would be entitled, at his death, not only to $3,000, but to 'all the money paid on the policy in assessments,' respondent should be assessed, on the death of each member, not only on $3,000, but in addition thereto, on the sum of all assessments paid on the policy.

"Respondent sues in this action to recover the amount of said assessments claimed to have been in excess of $2.55 per thousand."

That the constitution and by-laws printed on the

back of the policy became a part of the contract of insurance by virtue of the following provision, written on the face of the policy to-wit: "that the constitution and by-laws printed on the back of this policy shall separately and collectively form and be a part of the contract," is unquestionably true. [Laker v. The Royal Fraternal Union, 95 Mo. App. 353, 75 S. W. 705; Richmond v. Supreme Lodge, 100 Mo. App. l. c. 19, 71 S. W. 736.]

2. Respondent, in his application (made a part of the contract of insurance) agreed "to abide by the constitution, rules and regulations of the company as they now are or may be constitutionally changed hereafter." Section 4, of the constitution, was amended (February 16, 1900) in a constitutional manner and is binding upon the respondent, unless, without his consent, it materially modified the contract of insurance. It is conceded that the amendment increased respondent's assessment but it is insisted by the appellant that respondent agreed in the contract of insurance that this might be done. This contention is founded on the clause in the policy whereby respondent agreed to abide by the constitution, rules and regulations of the company as they were at the date of the policy or as they might be constitutionally changed in the future. It has been repeatedly held by this court that a contract of insurance made with a beneficial insurance company cannot be materially modified or changed without the express assent of the insured. [The Grand Lodge of the A. O. U. W. of Mo. v. Sater, 44 Mo. App. 445; Sackberger v. Grand Lodge I. O. T. L., 73 Mo. App. l. c. 42; Smith v. Supreme Lodge K. of P., 83 Mo. App. 512; Morton v. Supreme Council, 100 Mo. App. 76, 73 S. W. 259.]

In the case of Morton v. Supreme Council, supra, at pages 91-2, it is said: "But there are numerous well-considered opinions in which it is ruled that subsequent by-laws undertaking to reduce the amount to be paid in

certain contingencies, do not take effect on previous contracts; and that a stipulation to comply with future regulations means the member will comply with such as relate to his duties as a member, but does not mean that the society may interfere with the essential purpose of the contract, namely, the indemnity covenanted to be paid. [Hysinger v. Supreme Lodge, 42 Mo. App. (St. L.) 635; Knights Templar, etc., v. Jarman, 104 Fed. 638; Supreme Council v. Getz, 112 Fed. 119; Pokerfky v. Assn., 121 Mich. 456; Becker v. Benefit Society, 144 Penn. St. 232; Nesler v. Connor, 17 Penn. St. 136; Hale v. Ins. Co., 31 Atl. (Pa.) 1066; Becker v. Mutual Benefit Ins. Co., 48 Mich. 610; Wiler v. Equitable Union, 36 N. Y. Supp. 734; Langan v. Legion of Honor, 70 N. Y. Supp. 663; Newhall v. Legion of Honor, 63 N.E. (Mass.) 1; Wist v. Grand Lodge A. O. U. W., 22 Oregon 271; Gaut v. Legion of Honor, 64 S. E. (Tenn.) 1070; Strauss v. Mutual Reserve Fund, 128 N. C. 465; Bregaw v. Knights of Honor, 38 S. E. (N. C.) 905.]" See also Thibert v. Supreme Lodge, Knights of Honor, 47 L. R. A. 136.

In the case of Richmond v. Supreme Lodge, 100 Mo. App. 8, cited and relied on by appellant, the policy was not for a definite and certain sum to become due on the death of the member, but for such sum, not exceeding two thousand dollars, as might be determined by the charter, constitution, laws, rules and regulations in force at the time the policy became payable; it was held that the certificate of insurance contemplated that the order might at any time change its by-laws, etc., so as to affect the amount of insurance to be paid on the death of the member, and that the member agreed in advance to be bound by such changes.

The cases of Morton v. Royal Tribe of Joseph, 93 Mo. App. 78; Brower v. Supreme Lodge, 74 Mo. App. 490, and the State ex rel. v. Grand Lodge A. O. U. W., 70 Mo. App. 456, cited and relied on by appellant, have

no application to the facts of the case in hand. I think it may be safely asserted that the doctrine of this court is, that beneficiary associations, doing an insurance business on the assessment plan, are without authority to change or modify their contracts of insurance without the express assent of the members, and that this doctrine is supported by the great weight of authority elsewhere, as shown by the cases cited in the opinion in Morton v. Supreme Council, supra. The assent of the member may be shown by the certificate of insurance, as was the case in Richmond v. Supreme Lodge, supra, or it may be shown by his long acquiescence to the amended law, or by his express assent to the amendment when made. The respondent protested against the amendment and, according to the decision of this court, was not bound thereby, if it modified his contract of insurance. It is conceded that it materially increased his assessments. The cost of his insurance was measured chiefly by the number and amount of assessments the company might make upon him for the payment of death losses. The increase in the amount of each of these assessments necessarily increased the cost of his insurance and for this reason the amendment materially modified his contract.

3. The policy provides that, "In consideration of nine dollars and the agreements and stipulation hereinafter expressed, Erasmus D. Pearson, minister, of Louisiana, Missouri, is admitted to membership in the Knights Templars and Masons Life Indemnity Company, for the term of life, from the seventeenth day of January, 1887, at twelve o'clock, noon.

"And in further consideration that the said Erasmus D. Pearson shall pay all dues and assessments made upon him as such member, in pursuance of the constitution and by-laws of said company at the time and in the manner required of him, the said company will pay, at their principal office, within sixty days after notice and satisfactory proof of the death of said member is fur-

nished said company, to Orpha M. Pearson, wife, children or heirs of said member, and in the order named (unless otherwise ordered by the member in his application, or, if he chooses, subsequently by will or otherwise, in which case the company shall be notified by the member in writing, and the receipt of such notification be duly acknowledged by the company, see section 5, of article 7, on back of this policy) the sum of three thousand dollars, and all the money paid on the policy in assessments subject to the limitation as to the amount of such payments as is provided in section one of article seven of the constitution on the back of this policy."

The section of the constitution referred to and indorsed on the back of the policy is as follows:

"Article 7, section 1.—*Benefits.*—Upon due notice and satisfactory proof of a death of a member of this company, the board of directors shall, within sixty days, pay the widow, children or heirs of the deceased member (and in the order named unless otherwise ordered by the member during his lifetime or in will) the amount set forth in the deceased member's policy of membership. Provided that a policy of membership for $5,000 shall be good for all the money in the death fund arising from one assessment, provided it shall not exceed $5,000 and all the money paid on the policy in assessment; and a certificate for $4,000 shall be good for four-fifths of all the money in the death fund arising from one assessment, provided it shall not exceed $4,000 and all the money paid on the policy in assessment; and so on in the same proportion as to all certificates."

Section 3, article 4, of the constitution (indorsed on the back of the policy) provides: "Policies of membership may be issued upon a basis of benefits ranging in amounts to five thousand dollars and all the money paid in assessments upon the policy, but no member shall hold more than one policy at the same time." By section 4 (assessment rate section) of the same article,

the sum of one thousand dollars is made the unit for determining the rates of assessment.

We think it clearly appears, both on the face of the policy and from section 3, article. 4, of the constitution, that the company agreed at the death of respondent to pay his beneficiary three thousand dollars, the face of the policy, and all the moneys paid in by respondent upon assessments.

In Knight Templars & Masons Life Indemnity Company (this company) v. Jarman, 104 Fed. Cir. Ct. Rep. l. c. 643, this construction was put upon appellant's policies issued prior to the amendment of the constitution passed in 1889. And in the same case it was ruled that an amendment, which expunged the provisions which obligated the company on the death of a member to refund all money paid upon assessments, did not have a retrospective operation and no effect upon contracts of insurance entered into prior to the adoption of the amendment. On account of this novel feature in the contract of insurance, the appellant contends that the sum of the insurance (three thousand dollars), plus the amount the respondent had paid in at the date of any assessment furnishes the amount of insurance and the gross sum upon which his assessment should be rated at the rate of $2.55 per thousand; in other words, that the company may levy its assessment, not only on the three thousand dollars of stated insurance, but may also, in addition thereto, levy an assessment upon the gross sum paid in as assessments. A sufficient answer to this contention is that the company has not done so and there is no clause in the constitution nor anything in the contract of insurance that authorizes it. By section 4, article 4, of the constitution, as above stated, one thousand dollars is made the unit of assessment, therefore, an assessment could not be made on any amount less than one thousand dollars or on a sum over one thousand and under two thousand dollars. By making one thousand dollars the unit for assessment, assessments

paid in could not be assessed until they aggregated one thousand dollars, nor could the base for levying an assessment be again raised until a second one thousand dollars had been paid in assessments. If the company's purpose was 'to use assessments paid in as a basic factor for levying assessments on its members to pay death losses, it would not have enacted section 4, article 4, of the constitution. Neither the policy nor any section of the constitution indicates that the purpose of levying assessments on the amount of assessments paid in was in the minds of either of the parties to the contract of insurance at the time it was made. But it is insisted that upon equitable grounds and for self-preservation, as well as for the protection of its members, the company should be granted the right to exercise this power. The stipulated consideration of the policy is the rate per thousand fixed by section 4, article 4, of the constitution, and it is no more competent for a court of law or of equity, for the reason of expediency or for the purpose of relieving against an apparent hardship, to add to or subtract from this plain and unambiguous stipulation in the contract than it would be to add to or subtract from the three thousand dollars of indemnity stipulated to be paid to the beneficiary on the death of the member. The company fixed the rates of insurance and, we presume, fixed them high enough to meet its obligations to pay both the face of the policy and the amount of assessments paid in on the death of a member. If it did not do this, the fault is its own for which the respondent is in nowise responsible.

Discovering no reversible error in the record, the judgment is affirmed. All concur.