BRIDGET MCLAUGHLIN, APPELLEE, V. SOVEREIGN CAMP, WOODMEN OF THE WORLD, APPELLANT.

FILED OCTOBER 16, 1914. No. 17,710.

1. **Death: PRESUMPTION.** "A presumption of death arises from the continued and unexplained absence of a person from his home or place of residence for seven years, where nothing has been heard from or concerning him during that time by those who, were he living, would naturally hear from him." *Holdrege v. Livingston,* 79 Neb. 238.

2. ———: ———. In such case the presumption is that the absentee died during the first seven years of his unexplained absence. There is no presumption that his death occurred at any particular time during said period.

3. ———: ———. In such case an insurer cannot avoid its contract of insurance on the life of such absentee because of an alleged violation by the insured of a by-law adopted by the insurer during such unexplained absence, without evidence that the insured was living when the by-law was adopted.

APPEAL from the district court for Holt county: WILLIAM H. WESTOVER, JUDGE. *Affirmed.*

*Brome & Brome* and *A. H. Burnett,* for appellant.

*M. F. Harrington, contra.*

SEDGWICK, J.

This is an action on a fraternal beneficiary certificate for $1,000 issued by defendant to James W. McLaughlin. Plaintiff is the mother of assured, and is named in the certificate or insurance contract as beneficiary. In the petition it is alleged that assured is dead, and that he and plaintiff performed all of the conditions of the contract on their part. These allegations and the liability of defendant are denied in its answer. From judgment in favor of plaintiff for the full amount of her claim, defendant has appealed.

1. There is no direct evidence that assured is dead. To establish that fact and the resulting liability of defendant, plaintiff relied on proof of assured's absence without tidings for more than seven years. The beneficiary certificate became effective as an insurance contract May 2, 1900. At that time assured was an unmarried man, about 24 years of age, and resided with his father and mother and other members of their family at O'Neill, Nebraska. Shortly afterwards he went to Park City, Utah, and worked in a mine. While there he wrote and posted family letters regularly and sent money to his mother. Early in 1904 he left Utah and went to Lima, Peru. His father and mother received from him a letter dated at that place March 30, 1904, in which he said he had changed his residence because he thought he could do better down there, and stating: "I am going up to a place called Cerro de Pasco, so I cannot give you any address with letter, but will write you when I get settled." A companion, who went with him to Lima, but who promptly returned to Park City, wrote to assured's father as follows: "We stayed in the city of Lima, Peru, a couple of weeks and I, not seeing any favorable chances for work and not liking the climate, started for home. Jim refused to come with me, saying that he would try the mines first. On the day that I left there I saw him at the train starting for the mines of the Cerro de Pasco Mining Company which are located about sixty miles from the city." Assured has never since been heard of.

The first question is whether the evidence entirely fails to establish the presumption of death of the insured. The findings of the trial court in actions at law, like the verdict of a jury, will not be disturbed, if the evidence is substantially conflicting. The rule now thoroughly established and always acted upon is that the verdict of the jury or findings of the court in jury cases will be sustained by this court upon appeal, unless upon the whole record found to be clearly wrong. Other forms of expression sometimes adopted in opinions are not intended by the court to vary

or modify the rule now so well established and uniformly acted upon.

The best authorities, with substantial unanimity, hold that whether seven years' continued absence from one's usual place of residence will raise the presumption of death must depend largely upon the circumstances and conditions of each particular case. Upon this point the supreme court of Kansas, which has perhaps required as strict proof to raise this presumption as has any court in this country, said: "It is conceived, however, that the character of the inquiry, the persons of whom it must be made, and the place or places where it must be made are all to be determined by the circumstances of the case." *Modern Woodmen of America v. Gerdom,* 72 Kan. 391. In that case and in *Renard v. Bennett,* 76 Kan. 848, the court appears to adopt the rule that, when a young unmarried man leaves the home of his parents and goes from place to place for some time, corresponding regularly with his parents, and suddenly ceases corresponding, and nothing is heard from him for more than seven years, inquiry must be made at all places and of all people where there was any probability that information might be obtained. But, in general, the courts of this country have held, as did the supreme court of Wisconsin, that it "does not require proof of diligent search and inquiry in order to establish the presumption of death when a person has absented himself from his home or place of residence for seven years." *Miller v. Sovereign Camp, W. O. W.,* 140 Wis. 505. The supreme court of Minnesota approved this instruction: "If you find from the evidence that on the 17th day of July, 1901, Behlmer (that is, Fred) left his home, wife, and children, and that he has never returned, and that no tidings from him have ever been received by his family, a presumption arises after seven years that he is dead." *Behlmer v. Grand Lodge, A. O. U. W.,* 109 Minn. 305; *Magness v. Modern Woodmen of America,* 146 Ia. 1; *Oziah v. Howard,* 149 Ia. 199.

This question has frequently been before this court, and, so far as its application to the case at bar is concerned,

seems to have been definitely settled by our former decisions. In *Cox v. Ellsworth*, 18 Neb. 664, it was held: "The death of an absent person may be presumed in less than seven years from the date of the last intelligence from him, from facts and circumstances other than those showing his exposure to danger which probably resulted in his death." In *Holdrege v. Livingston*, 79 Neb. 238, it was held: "A presumption of death arises from the continued and unexplained absence of a person from his home or place of residence for seven years, where nothing has been heard from or concerning him during that time by those who, were he living, would naturally hear from him." This seems to be in line with the holdings of the Wisconsin, Minnesota, and Iowa decisions above cited. The evidence in this case was that the assured was a young unmarried man. He had no home or fixed place of residence other than with his family at O'Neill, Nebraska. Soon after he was insured he was employed in Utah, but his sister testified, as quoted in the defendant's brief: "He was home about twice or three times a week." Several years after he was insured he went to Lima, Peru, with a young companion, and, after they had remained there about two weeks, he concluded to go into the mining regions prospecting or to find some occupation. He had been in the habit of writing home to his family once each month during all of this time, and had regularly and monthly sent money to his parents, who were very aged and apparently needed his assistance. When he concluded to go into the mining regions, he wrote a letter to his parents, telling them of his intention, and saying that as soon as he had located he would write and give them his address. This was the last that was ever heard in regard to him. His parents caused letters to be written addressed to him at Lima and also letters addressed to him in care of the mining corporation which he intended to visit, and these letters were returned uncalled for. If he had established a residence in Utah or in some foreign country, it might have been necessary to make further inquiries in such places of residence. His statement in his letter that "you

will see by the postmark on this letter that I have changed my place of resedent" was plainly not intended as a declaration that he established a residence there, which the evidence shows beyond question was not the fact.

In *Thomas v. Thomas,* 16 Neb. 553, it was held that a wife could not rely upon the presumption of the death of her husband because of his absence from her for a period of seven years, when she, after he had left her, removed from state to state, establishing new places of residence, and had made no inquiry at her place of residence at the time her husband left her. And, when the same case was before this court upon a subsequent appeal (19 Neb. 81), the court held that the fact that the husband had been seen alive within the seven years overcame the presumption of his death. But upon the first appeal it was definitely decided that, if he had been absent for a period of seven years, and during that time had not been heard from "by those who, were he living, would naturally hear from him," this was sufficient to raise the presumption of death. Surely it cannot be said that, under the evidence in this case, the finding of the trial court is so unsupported that we must say, as matter of law, that it is clearly wrong.

2. The defendant contends that under its by-laws the insured has forfeited his certificate. His original contract of insurance contained the provision that the assured should comply with the laws, rules and regulations in force when he became a member, or which might thereafter be enacted. In July, 1907, when the insurance had been in force more than seven years, and about three years after the assured was last heard from in Peru, the defendant alleges that it adopted the following by-law: "Any member who shall abscond, remove or depart from his home or last place of residence, and remain away for a period of one year, and not report to the clerk of his camp, or, if a member at large, to the sovereign clerk, of his location, with post office address, shall thereby forfeit his membership, and his beneficiary certificate shall become null and void. The absence or disappearance of a member from his last known place of residence for any

length of time shall not be sufficient evidence of the death of such member, and no right shall accrue under his certificate or membership to a beneficiary or beneficiaries, nor shall any benefits be paid until satisfactory proof has been made of the death of the member while in good standing. No beneficiary or other person shall have the right to pay assessments and dues for a member who has been absent for one year and whose location is unknown, but in such case the clerk of the camp shall notify the person offering to make such payments that no further payments will be accepted until proof of the member's location and residence is made within the time hereinafter provided, and such clerk shall record such member as suspended and report such action to the sovereign clerk, together with the residence and post office address of the beneficiary or beneficiaries and the last known address of the member; also such further information respecting the absence of the member as he possesses. Upon satisfactory proof of the member's whereabouts, the sovereign commander may order him reinstated in his camp upon payment of all arrearages in assessments and dues. In case of the failure of the member, his beneficiary or other persons interested in his certificate, to make proof of the member's whereabouts within six months after such notification by the clerk, his suspension shall remain and become permament and binding, and he cannot be reinstated except as above provided, and neither the member, his beneficiary, nor any other person shall have any right to benefits under his beneficiary certificate."

About three months after the adoption of this by-law, the clerk of the local camp notified Thomas McLaughlin, the father of the assured, in writing, as follows: "I hereby notify you that I must refuse any more money in payment for your son J. W. McLaughlin as assessments on his certificate, No. 15326, W. O. W., on account of his disappearance over one year ago, and will send him in suspended in my Oct. '07 report, by instruction from Sov. Camp. Am sorry, but can't help it." During the seven years prior to that time the mother of the assured, who

had received regular remittances from her son, paid regularly the dues as they matured, and afterwards, until the full seven years had expired, she tendered, or caused to be tendered, to the clerk of the local camp all dues and assessments. These tenders were refused and were afterwards kept intact by the assured's mother and brought into court on the trial.

It sometimes happens that one whose life is insured abandons his home and parents for more than seven years, and afterwards returns, or is known to be living. Insurance companies, no doubt, may adopt reasonable regulations to guard against payment of unjust claims in such cases. Whatever may be thought of the reasonableness of the rule adopted by defendant, as a general proposition, it cannot have the effect claimed for it in this case. When the assured went to South America, there was no such provision in his contract. If he lost his life in the mining regions within two weeks after he arrived there, it would, of course, not be insisted that several years thereafter a by-law could be adopted which would cancel his certificate. It is alleged as a defense in this case that he has violated this by-law. Unless he was living when the by-law was adopted, he could not violate it. This the defendant has wholly failed to prove. There is no presumption that he was then living. In Lawson, Law of Presumptive Evidence (2d ed.) p. 255, the author states that the rule in this country is different from the rule in England, and that in this country he is presumed to be alive until the end of seven years. The text and the notes seem to be in conflict on this point, and the authorities cited appear to be very conflicting.

In *Coe v. National Council of K. & L. of S.*, 96 Neb. 130, there is a quotation from the opinion of Sanborn, J., in *Northwestern Mutual Life Ins. Co. v. Stevens,* 71 Fed. 258, in which it is said: "The established presumption of fact from the disappearance of an individual under ordinary circumstances, from whom his relatives and acquaintances have never afterwards heard, is that he continues to live for seven years after his disappearance." The question

whether the presumption related to the particular time of death was not involved either in the case in the federal court or in our decision in which the language was quoted. In both cases the question was whether, under the special circumstances involved, the presumption of death arose before the expiration of seven years. The language used by the eminent jurist was apparently inadvertent. He intended to express the same idea which he stated in the syllabus, where the points of law are supposed to be accurately stated. "Seven years is the period at which the presumption of continued life ceases." The quotation in our decision discusses somewhat at large the special circumstances under which the presumption will arise in less than seven years, and it is that part of the quotation which applied in our case and which is approved. The federal court also cited Minnesota and Iowa decisions, where it is held that there is no presumption of the particular time of death, and in the *Coe* case we also cited *Winter v. Supreme Lodge K. of P.,* 96 Mo. App. 1, in which the law is stated in the syllabus: "The presumption of death, arising from unexplained absence for seven years, does not necessarily imply that the person died at the end· of that period." This case was again before the appellate court (101 Mo. App. 550), and from both opinions it appears that it was determined upon the special circumstances in the case, and the question now before us was not necessarily determined or considered.

In 4 Ency. of Evi. 47, 48, the rule is stated "that the date on which the death of such an absentee occurred is a matter of proof," and "the burden of proof is on the party asserting that death occurred on a particular time." This statement of the law is well supported by authorities there cited. It is peculiarly applicable to this case. There is a· strong probability that, if he had lived to adopt a post office address in Peru, he would have informed his parents of that fact, as he promised in his last letter that he would do. Even if the law were otherwise, and if the presumption ordinarily were that the absentee lived to the end of the seven years, the circumstances of this case are

such that we could not say that the trial court erred in not finding from the evidence that the assured lived until this by-law was enacted, and that he so violated the same and forfeited his beneficiary certificate. It is alleged that he was subject to this by-law, and that he has violated it. This could not be true unless he was living when the by-law was enacted, and this defendant has not proved.

The findings and judgment of the trial court are not so unsupported by the evidence that we can say they are clearly wrong. The judgment is therefore

AFFIRMED.

ROSE, J., dissents.