NANCY BELLE RICHEY, Appellee, v. SOVEREIGN CAMP OF THE WOODMEN OF THE WORLD, Appellant.

INSURANCE: Unreasonable Changes in By-Laws. An advance
1 agreement by an insured in a fraternal benefit certificate, to be bound by future changes in the constitution and by-laws of the society, does not authorize a change, after the insured has disappeared, which provides:

1. That disappearance of the insured shall create no presumption of death until it has continued for a period of time equal to his life expectancy at the time of disappearance; and

2. That, in case of disappearance, no liability shall attach under the certificate, unless payments of assessments, dues, etc., are continued up to the close of such member's life expectancy.

INSURANCE: Illegal Assessments—Payment—Effect. Payment,
2 for a time, of illegal assessments, works no estoppel to refuse to continue to pay such illegal exaction.

ESTOPPEL: Taking Advantage of One's Own Wrong. One may
3 not insist that another do a certain thing, and then, when such

other has complied, base any estoppel thereon. So held as to the payments of illegal insurance assessments.

**INSURANCE: Unequivocal Denial of Liability—Waiver.** An insurer who, upon receipt of proof of death arising by presumption of unexplained absence, unequivocally plants himself upon the claim that proof of *actual* death alone will satisfy the policy, may not thereafter complain that the submitted proofs of death were not sufficiently specific.

**DEATH: Unexplained Absence.** An unexplained absence of seven years from one's usual place of abode raises a presumption of death at some time during said seven years—a presumption which has the force and effect of substantive evidence.

**INSURANCE: Beneficiary—"Dependent."** The fact that an insured, an orphan, lived at the house of his aunt by marriage, and made such place his home for many years, does not constitute the aunt a "dependent," within the meaning of a *contract* provision permitting a "dependent" to be a beneficiary. (And see Secs. 1789, 1824, Code, 1897.)

**INSURANCE: Beneficiary—"Relative"—Aunt by Affinity.** An aunt by affinity may be a legal beneficiary in an assessment certificate of insurance, she being a "relative," within the meaning of the statute which declares who may be beneficiaries. (See Secs. 1789, 1824, Code, 1897.)

**INSURANCE: Prohibited Beneficiary.** Incapacity on the part of a person to be a legal beneficiary may not be waived by the insurer.

**APPEAL AND ERROR: Improper Form of Judgment.** One may not for the first time on appeal complain that a judgment, fairly conformable to the prayer, was for a specified sum, when it ought to have been in the form of an order for the levy of an assessment.

*Appeal from Polk District Court.*—W. S. AYRES, Judge.

JUNE 27, 1918.

THE plaintiff had a recovery as beneficiary of a certificate issued by the defendant, and it appeals.—*Affirmed.*

*Arthur H. Burnett* and *Frank H. Dewey,* for appellant.

*C. S. Cooter,* for appellee.

SALINGER, J.— 1. In March, 1895, the defendant issued a benefit certificate to one Harry A. Richey. This certificate was accepted with a provision that the same should be liable to forfeiture if the assured should fail to comply with the "conditions, constitutions, fundamental laws and such by-laws as are or may be adopted" by the insuring society. Some four years after what is claimed to be the disappearance of Richey, the by-laws were made by the society which provide that it shall be a binding condition of the certificate that:

1. INSURANCE:
unreasonable
changes in
by-laws.

"The absence or disappearance of the member from his last known place of residence for any length of time shall not be sufficient evidence of the death of such member, and no right shall accrue under his certificate of membership to a beneficiary or beneficiaries, nor shall any benefits be paid until proof has been made of the death of the member while in good standing. The absence or disappearance of the member herein named, whether admitted heretofore or hereafter, from his last known place of residence, and unheard of, shall not be regarded as any evidence of the death of such member nor give or create any right to recover any benefits on any certificate or certificates issued to such member, or on account of such membership, in the absence of the proof of his actual death, aside from and unassisted by any presumption arising by reason of such absence or disappearance, until the full time of his life expectancy at the time he disappears, according to the Carlyle Table of Life Expectancy, as compiled, and then only in case all assessments, dues, special assessments and all other sums now or hereafter required under the laws of the state, be paid on behalf of such member within the time required until the expiration of the term of such life expectancy. And the conditions of this certificate shall operate and be construed as a waiver of any statute of any state or country, of any rule of the

common law or any state or country to the contrary."

The appellant contends that this change in by-laws is binding. The trial court held otherwise. Upon the decision of this question depends whether many things urged in argument pro and con need consideration.

There are many decisions—quite a few in our own reports—wherein changes of by-laws made after the insurance first becomes effective are upheld, on the ground that the change made is a reasonable one, there having been an advance agreement to be bound by future changes. In the case before us, there was such an advance agreement. But all this is not controlling. For, here, the question is whether, though future changes are authorized by contract, a change which is either unreasonable or violates the public policy of the state can be sustained, and whether the change asserted here is either unreasonable or violative of statute or public policy.

II.  There was an advance agreement that the obligation of the society was conditioned upon compliance by the member with the "conditions, constitutions, fundamental laws and such by-laws as are or may be adopted" by the society. But it remains to be seen what the scope of such an advance agreement is. All by-laws must be reasonable, and consistent with the general principles of the law of the land; and these are to be determined by the courts when a case is properly before them. Bacon on Benefit Societies (1888), Section 82. An expressly conferred power to enact by-laws makes a change binding only as to benefits derived from mere membership, and not as to an independent contract made with the association. *Farmers Mut. Hail Ins. Co. v. Slattery*, 115 Iowa 410. An amendment of a by-law in a hail insurance policy which exempts the company from liability for loss occasioned by the blowing of snow and hail, is not binding. It introduces new terms and conditions into the original contract which will bind the insured only if he assents

thereto. *Jordon v. Iowa Mut. T. Ins. Co.,* 151 Iowa 73. We say, in *Fort v. Iowa Legion of Honor,* 146 Iowa 183, at 195, that "many courts have held that, even where there is an agreement on the part of the assured to be bound by subsequent changes, the society cannot make essential amendments affecting the rights of the insured as the holder of a benefit certificate."

A change which operates to raise an assessment must be a reasonable one. 2 Cooley's Briefs on Insurance, 1019. Mere general consent that the constitution and by-laws may be amended, will not authorize a change that destroys the vested right of the assured under his contract, by subjecting him to a greater rate of assessment than the contract calls for. *Strauss v. Mutual R. F. L. Assn.,* 128 N. C. 465 (39 S. E. 55); *Pearson v. Knight Templars,* 114 Mo. App. 283 (89 S. W. 588). So of one scaling the certificate materially. *Fort v. Iowa Legion of Honor,* 146 Iowa 183, at 195; *Wuerfler v. Trustees, etc., Druids,* 116 Wis. 19 (92 N. W. 433); *Supreme Council v. Batte,* 34 Tex. Civ. App. 456 (79 S. W. 629.) Such advance agreement may not reasonably be construed into an assent in advance to any change which the insurer may see fit to make in its constitution or laws; for instance such as materially lessen the value of the policy by reducing the amount of the indemnity which its terms promise to pay. *Knight Templars v. Jarman,* (C. C. A.) 104 Fed. 638. It does not authorize a reduction of the benefit agreed upon. *Gaut v. American Legion of Honor,* 107 Tenn. 603 (55 L. R. A. 465); *Pokrefky v. Detroit Firemen's Fund Assn.,* 121 Mich. 456 (80 N. W. 240); *Supreme Council v. Getz,* (C. C. A.) 112 Fed. 119. It has been held, notwithstanding advance agreements to be bound by changes, to be an ineffective change where, as to one who had the right to engage in the occupation of a freight brakeman at the time he joined a society, an amendment provided he should forfeit his membership certificate if he engaged in that work. In

*Olson v. Court of Honor,* 100 Minn. 117 (110 N. W. 374), the certificate provided that there might be a liability where a suicide was committed while the assured was insane, if, at the time, he was under treatment for insanity. It was held that an amendment which limited the benefit in all cases of suicide to 5% of the face of the certificate for each year that the assured had been continuously a member, was void for being unreasonable.

The most that appellant may claim is that it is very generally held that a by-law which interferes with no vested right, and relates merely to procedure, or merely provides a rule of evidence, is reasonable. We have held there may be an amplification of by-laws existing when the insurance is effected, so long as such change does not materially alter the effect of the original provision,—such as that there shall be a forfeiture if there be an intemperate use of intoxicants (*Ury v. Modern Woodmen of America,* 149 Iowa 706) ; and that a by-law which merely and reasonably defines what is to constitute a broken leg, for which the association shall be liable, is not unreasonable. Wherefore, such change in by-law will be sustained, where there is an advance agreement to be bound by future enacted by-laws. *Ross v. Modern Brotherhood of America,* 120 Iowa 692. Is the change we are considering such an unreasonable one as that it is not effective despite advance agreement that future changes may be made? It certainly is as much so as the ones held ineffective in the cases to which we have referred. The change which the association asserts to be a binding one engrafts upon the original agreement a condition that, although the law of the state makes disappearance for a stated time presumptive evidence that the assured has died, such statute shall not be effective, and that, moreover, no payment shall be due, no matter how long the disappearance has continued, unless the premiums be paid for the number of years which form the expectancy of the assured. In the instant case,

this means that, unless proof of actual death becomes available, payments under the certificate sued on by plaintiff would have to continue for nearly 40 years yet, and possibly for a time many years longer than there would have been obligation to pay under the conditions of the certificate as it stood originally.  It does not seem to be strained to say that such a change is so unreasonable as that it was never intended to be covered by the general advance agreement to be bound by future changes, and that, as plaintiff pleads, to uphold the amendment is violative of statute and public policy. It was held in *McLaughlin v. Sovereign Camp W. O. W.*, 97 Neb. 71 (149 N. W. 112), wherein, on a similar advance agreement, a similar change in by-laws was asserted to be valid, that, where such by-law is adopted during the unexplained absence of the assured, such by-law may not be asserted without evidence on part of the insurer that the insured was living when such by-law was adopted; and in *Samberg v. Knights of the Modern Maccabees*, 158 Mich. 568 (123 N. W. 25), that a by-law such as the one before us is void for being against public policy, where the effect of it is to render ineffectual a statute provision providing that a person disappearing and his whereabouts remaining unknown for seven years shall be presumed to be dead, and that the beneficiary proving the disappearance of the member and a failure to hear from him for over seven years is entitled to recover.

In *Olson v. Modern Woodmen of America*, 182 Iowa 1018, a change in by-laws was made after the assured had disappeared.  The by-law provided that no lapse of time or absence or disappearance on part of any member heretofore or hereafter admitted, without proof of actual death while in good standing, should entitle the beneficiary to recover except as hereinafter provided, to wit: that the disappearance or long-continued absence of any member, unheard of, shall not be regarded as evidence of death or give any right to recover

on any benefit certificate heretofore or hereafter issued until the full term of the member's expectancy of life according to the National Fraternal Congress table of mortality has expired, within the life of the benefit certificate in question. We held that this by-law could not be sustained, because it is unreasonable.

It may be conceded that a provision like the one before us has been upheld in *McGovern v. Brotherhood*, 31 Ohio C. C. 243, the decision in which was affirmed by the Supreme Court of Ohio. It may further be conceded that a change similar to the one under consideration here was upheld in *Kelly v. Supreme Council*, 46 App. Div. 79 (61 N. Y. Supp. 394). And it is true this case is mentioned in *Roeh v. Business Men's Prot. Assn.*, 164 Iowa 199, but true as well that it is merely cited, and there is neither approval nor disapproval. We decline to be controlled by these. We hold that this change in by-law is ineffective.

III. The defendant urges that, because the plaintiff continued to pay dues and assessments on the certificate, she has elected to comply with the terms of the changed by-law, and is now estopped from making any claim for benefits until the expiration of the expectancy of Harry Richey, as shown by his age at the time of his entry. The defendant was either entitled to have these payments made when they were, or it was not. If it had the right to receive them, the plaintiff was not estopped to claim payment of the certificate because she had done what she was required to do. If the society was not entitled to these payments, the fact that illegal exactions were submitted to for a time will not create an estoppel to discontinue such exactions; because, as said in *Gibson v. Iowa Legion of Honor*, 178 Iowa 1156, otherwise the wrongdoer would profit by his own wrong, coupled with the fact that his wrongful demands were acceded to. Moreover, it is held in the same case that such an

2. INSURANCE: illegal assessments: payment: effect.

estoppel cannot exist, unless making the payments to the society induced some change of position on its part; and that factor is not present in this case. We hold that the payments constitute neither an acquiescence in the changed by-law nor an estoppel in any form upon the plaintiff.

Be that as it may, the society could estop itself to urge the making of these payments as a defense if its agents induced the making of these payments after both parties knew

3. ESTOPPEL: taking advantage of one's own wrong.

that the assured had disappeared. The evidence fairly establishes that such payments were so induced.

IV. Our holding that the change in by-law is not effective disposes of the defense that there was a failure to make required proof of loss, or, in other words, a failure to prove actual death. Proof, basing the claim

4. INSURANCE: unequivocal denial of liability: waiver.

upon disappearance, was made, but in a somewhat loose way. That, however, is not material. The defendant unequivocally took the position that it was under no liability

until actual death were shown or until after payments were made for the full term of the expectancy. We think that the proof was not required to go beyond showing such disappearance as will raise a presumption of death, and that, at all events, different and further proof was waived. See *Behlmer v. Grand Lodge A. O. U. W.*, 109 Minn. 305 (123 N. W. 1071); *Gibson v. Iowa Legion of Honor*, 178 Iowa 1156; and *Nicholas v. Iowa Merch. Mut. Ins. Co.*, 125 Iowa 262.

V. We think that the evidence here was sufficient to raise a presumption of death, and are of opinion that this holding is sustained by *Modern W. of A. v. Gerdom*, 72

5. DEATH: unexplained absence.

Kan. 391 (82 Pac. 1100); *Magness v. Modern Woodmen*, 146 Iowa 1; *Tisdale v. Connecticut Mut. L. Ins. Co.*, 26 Iowa 170 and 28 Iowa 12; 8 Ruling Case Law, 707 *et seq.* We

have no fault to find with the holding of *Hitz v. Ahlgren*, 170

Ill. 60 (48 N. E. 1068). The evidence in that case falls far
short of having the weight of that in this record. Fair ef-
fect of that here is that, during all former absence, the as-
sured had established a well-formed habit of writing at fre-
quent intervals to the plaintiff, his aunt,—who had, to a
great extent, taken the place of his mother,—but when he
left for the last time, he failed to advise her of his where-
abouts; that inquiry made failed to get any information of
him or of his being alive; and that, contrary to said habit, he
was not heard from the last time for during more than seven
years' absence. No reason appears why he should change
his habit of writing to his aunt, or why, if alive, he should
not return to his home and hers as he had in the past; and
he left his suitcase behind. He was of good habits and
"straight" and steady.

A presumption of death does arise from the contin-
ued and unexplained absence of a person from his home or
place of residence for seven years, where nothing has been
heard from or concerning him during that time by those who,
were he living, would naturally hear from him; and in such
case the presumption is that the absentee died some time
during the first seven years of his unexplained absence.
*McLaughlin v. Sovereign Camp W. O. W.,* 97 Neb. 71 (149
N. W. 112). Undisputed evidence that a man has been ab-
sent from home and unheard of for 17 years, although his
family have continued to reside in the same place, will war-
rant the conclusion that he is dead; and his wife is entitled
to dower in his lands. *Sherod v. Ewell,* 104 Iowa 253. These
holdings are not in conflict with *Seeds v. Grand Lodge A. O.
U. W.,* 93 Iowa 175, which merely holds that, where the cir-
cumstances indicate an absconding for an illegal purpose,
there is no presumption of death by reason of the fact that
the party has not been heard from in seven years; that, at
any rate, it will not be presumed he died within two years
after disappearance, so as to render valid an insurance pol-

icy which lapses at the end of the said two years for non-payment of dues and assessments.

It may be conceded that continued and unexplained absence for seven years, while sufficient to create the presumption of death, carries with it no presumption as to the time of death in the seven years. But that is not material. If the assured died at any time within the seven years, the death would create liability on the certificate.

Nor can we see how it is material that unexplained absence for seven years does not establish actual death, but merely a presumption of death. If the presumption remains unrebutted, for all practical purposes actual death is shown.

VI. We hold that plaintiff may not recover because of the contract provision which authorizes a *dependent* to be made a beneficiary. We do not think she is made such dependent by the mere fact that the assured lived in her house and made it his home there for many years; that his father and mother are both dead; and that he came to live with plaintiff after the family of his parents was thus broken up; and that he was a member of the family for about ten years; nor by the fact that it was testified to, under objection, that assured "contributed a part of the money he earned to me." Nor do we think that *Royal League v. Shields*, 251 Ill. 250 (96 N. E. 45), or *McCarthy v. Supreme Lodge N. E. O. P.*, 153 Mass. 314, run contrary to this, our conclusion. And in our opinion, *Palmer v. Welch*, 132 Ill. 141 (23 N. E. 412), supports it.

6. INSURANCE: beneficiary: "dependent."

### 6-a

The constitution of the defendant provides that the beneficiaries shall be wife, child, adopted child, parent, brother, sister, or other *blood relation*, or person dependent on the

member.   Section 7 of Chapter 65, Acts of the Twenty-first General Assembly, provides that such an association as defendant shall not issue a certificate "unless the beneficiary * * * is the husband, wife, *relative*, legal representative, heir, creditor or legatee of the insured member."   It is fairly the holding of *Bush v. Modern W. of A.,* 182 Iowa 515, that there is no power to effectively make a beneficiary who is outside of those in the class permitted by statute to be made beneficiaries.   Therefore, this plaintiff cannot recover, so far as the *contract* is concerned, because she is not a blood relation, being the wife of an uncle of the assured.   See *Supreme Lodge N. E. O. P. v. Hine,* 82 Conn. 315 (73 Atl. 791).   It is true that *Simcoke v. Grand Lodge A. O. U. W.,* 84 Iowa 383, and *Smith v. Knights of Maccabees,* 127 Iowa 115, and 29 Cyc. 114, hold that the word "relative," in a statute defining who may be a beneficiary, includes relatives by affinity, where nothing appears to indicate that the word is used in a more restricted sense, and that, therefore, a stepfather was within the term "relative."   The difficulty is that this aunt by affinity was not a blood relation, and the contract expressly limits the relationship to that of blood.   But the statute controls, and that does not use the term "blood relation," but the word "relation."   Therefore, the contract notwithstanding, this plaintiff might lawfully be accepted by the society as a beneficiary, as she was.

*7. INSURANCE: beneficiary: "relative?" aunt by affinity.*

### 6-b

If it was not permitted to make the plaintiff the beneficiary, the society itself could not waive her lack of capacity to become one.   *American Legion of Honor v. Perry,* 140 Mass. 580, 588; *Steele v. Fraternal Tribunes,* 215 Ill. 190 (74 N. E. 121); *Krause v. Modern Woodmen,* 133 Iowa 199; *Royal League v. Shields,* 251 Ill. 250 (96 N. E. 45).

*8. INSURANCE: prohibited beneficiary.*

This makes it immaterial to inquire into the claim that there is a waiver by or estoppel on the society.

We are unable to see the force of *Holden v. Modern Brotherhood,* 151 Iowa 673, as an authority in this case. So far as applicable, it merely holds that the beneficiary acquires no vested interest in the policy during the life of the insured, but that, on his death, the party entitled to the benefits acquires such an interest.

VII. It is a condition of the contract that, in case of death in good standing, the beneficiary shall receive such sum as may be collected from an assessment upon all members, the sum not to exceed the amount

**9. APPEAL AND ERROR: improper form of judgment.**

stated on the face of the certificate. It will be noted that, up to this point, this is not so much a provision that no judgment may be had for any definite sum, but one defining how much shall be paid. And so of a provision which entitles to participation in the beneficiary fund of the defendant to the amount of the sum stated. The appellant contends that the court erred in giving judgment to a stated amount with interest, because, under the petition, the only relief allowable was an order that an assessment be levied; and that, moreover, transferring the cause to equity on the application of the defendant, on the ground that it was necessary to order an assessment, and that a court of equity alone could order it, makes it the law of this case that a money judgment was erroneous. We are of opinion that all this takes too narrow a view of the prayer of the petition, which asks that defendant be required to levy an assessment to meet the obligation contained in its certificate, "and to pay her the sum of $1,100, and that she have judgment for that amount." This petition was never attacked. The point was never made that there was no right to enter such a money judgment as was prayed for. Under familiar rules, this objection is made too late, and we will not reverse because a judgment was entered

which was authorized by a prayer to which no objection was made in the trial court. In *Sleight v. Mystic Toilers*, 121 Iowa 724, the "principal contention" was whether an action at law would lie for any of the benefits promised. The difficulty is that here there was no contention over the matter, and that it presents the familiar instance of complaining too late that relief was prayed which a court of equity should not give because it was relief at law. The question is not whether the court of equity should have given judgment for a fixed sum, but whether appellant is in any position to complain that such relief was given. This disposes as well of *Rambousck v. Mystic Toilers*, 119 Iowa 263. Moreover, it has been held that, though there be a promise to pay an indefinite sum not exceeding the amount named in the certificate, and though there be an agreement to pay the proceeds of an assessment not to exceed a stated sum, if there is no evidence as to what an assessment would provide, plaintiff is entitled to recover judgment for the full amount of the certificate. And if it be the fact that an assessment would produce less than the face of the certificate, that is a matter of defense. *Makely v. American Legion of Honor*, 133 N. C. 367 (45 S. E. 649); *Covenant Mut. L. Assn. v. Kentner*, 188 Ill. 431 (58 N. E. 966).

As giving some support to payment of amount fixed, rather than the proceeds of an assessment, where there is no proof how much the assessment would realize, see *Hart v. Masonic Assn.*, 105 Iowa 717.

We find no error, and the judgment stands—*Affirmed*.

PRESTON, C. J., LADD, EVANS, and GAYNOR, JJ., concur.